JL

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald R. Huston, | No. CV-23-02203-PHX-JAT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| A. Mardesich, et al., | |
| Defendants. | |

Plaintiff Donald R. Huston, who is confined in the Central Arizona Correctional Facility, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). The Court will order Defendant Mardesich to answer Count One of the Complaint and will dismiss Count Two and Defendant Mendez without prejudice.

**I.     Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $168.60. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

. . . .

TERMPSREF

## II.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

### III. Complaint

In his two-count Complaint, Plaintiff sues Health Services Administrator L. Mendez and "Contract Healthcare Provider Facility Healthcare Admin" A. Mardesich. Plaintiff asserts claims regarding his medical care. He seeks compensatory and punitive damages, as well as his legal costs for this case.

In Count One, Plaintiff alleges the following:

Plaintiff is incarcerated at the Central Arizona Correctional Facility, a private prison operated by the GEO Group pursuant to a contract with the Arizona Department of Corrections, Rehabilitation and Reentry (ADC). In May 2020, Plaintiff underwent cataract surgery on his right eye at Southwest Eye Center. On February 17, 2022, Plaintiff woke up with a blind spot in his right eye. On February 20, 2022, Plaintiff submitted a health needs request (HNR) for his diminished eyesight. At some point, Plaintiff saw an offsite specialist, who determined that Plaintiff had a detached retina that required emergency surgery. On March 4, 2022, Plaintiff submitted an HNR stating that the specialist had told him that he needed emergency surgery. The same day, Defendant Mendez wrote in the plan of action on the HNR, "Already scheduled." On March 7, 2022, Plaintiff underwent surgery to repair the detached retina. The surgeon ordered Plaintiff to return for additional surgery.

On May 9, 2022, Plaintiff submitted an HNR stating that he could not see from his right eye and wanted to ensure the follow-up surgery was scheduled. On May 10, 2022, Plaintiff saw a nurse, who instructed Plaintiff to use an inmate letter, not an HNR, "for these types of questions as they bog down her nursing line." The same day, Plaintiff submitted an Inmate Letter to the Health Services Administrator requesting the second surgery. On May 13, 2022, Defendant Mardesich responded to the Inmate Letter, stating that she had called the surgery scheduler and had confirmed that Plaintiff was scheduled for the recommended eye surgery "soon."

Plaintiff apparently stayed in observation in the medical unit because he was told he was undergoing surgery the following day, but the next day, he was released to his housing

TERMPSREF

unit and was told the surgery was canceled because "GEO did not have the staff to transport [Plaintiff] to surgery."

On June 7, 2022, Plaintiff sent another Inmate Letter to "Medical" regarding the surgery and eyedrops he needed to use before surgery. On June 13, 2022, the HSA responded to the Inmate Letter, stating the surgery had been rescheduled, and the eye drops had been reordered.

On June 27, 2022, Plaintiff underwent surgery for a detached retina with placement of a NOS bubble in his right eye. Plaintiff did not receive the eye drops that he was supposed to use before surgery. The surgeon told Plaintiff that the NOS bubble must be released in six weeks. Plaintiff submitted two HNRs regarding the follow-up appointment the surgeon had ordered, but he did not receive a response. On August 16, 2022, Plaintiff submitted an Inmate Letter to "Medical" requesting care. The same day, Plaintiff sent an Inmate Letter to the HSA requesting care.

On August 17, 2022, Plaintiff felt that the NOS bubble had ruptured. The next day, Plaintiff was "informed to stop using HNR[]s and to use Inmate Letters." On August 23, 2022, Plaintiff spoke with the Deputy Warden, who looked at Plaintiff's eye and instructed Plaintiff to submit an HNR. Plaintiff "considered this a direct order from the Deputy Warden." On August 24, 2022, Plaintiff submitted an HNR per the Deputy Warden's order and again was told to submit an Inmate Letter.

On August 25, 2022, Plaintiff saw "a different doctor," who told Plaintiff that he needed to see the doctor who had performed the surgery. On August 27, 2022, Plaintiff sent an Inmate Letter to Defendant Mardesich. On September 9, 2022, Defendant Mardesich sent a response stating that Plaintiff "would be seen soon."

On September 26, 2022, Plaintiff sent another Inmate Letter to Defendant Mardesich, requesting an appointment. On October 5, 2022, Plaintiff saw the doctor who had performed the surgery, who told Plaintiff that "nothing else could be done." On December 12, 2022, Plaintiff requested a second opinion. Plaintiff was told that GEO only contracts with one retinal specialist and Plaintiff did not have the right to dictate his

healthcare.

Plaintiff alleges that Defendant Mardesich was responsible for Plaintiff's healthcare. Plaintiff asserts that Defendant Mardesich instituted policies that "focus on administrative duties of cost-savings instead of ensuring [Plaintiff received] constitutionally adequate medical care." Specifically, Plaintiff contends Defendant Mardesich required prisoners to address their medical needs by submitting Inmate Letters instead of "HNR protocols set by ADC[] policy." Plaintiff claims this deviation from ADC policy reduced the number of nurses required to "conduct nursing lines, which result[s] in delays or denials in proper healthcare." Plaintiff alleges that under ADC policy, he was required to be assessed by a nurse within 24 hours, but Defendant Mardesich's policy allows up to 20 workdays for a response. As his injury, Plaintiff alleges that he is now blind in his right eye.

In Count Two, Plaintiff alleges the following:

Defendant Mendez was responsible for ensuring that Plaintiff received follow-up care after his consultations and procedures. Defendant Mendez also was "the approving authority" for offsite medical appointments. Plaintiff "had delays of up to 100 days to get surgery after a doctor had ordered it as critical." As alleged in Count One, Plaintiff underwent surgery, during which a NOS bubble was placed in his right eye. The surgeon ordered that Plaintiff return in six weeks, but it "took 103 days to get back to the doctor." Defendant Mendez "had the ability to approve and arrange the follow-up procedure but chose not to, in a timely manner." During the delay, the NOS bubble ruptured. Plaintiff alleges that the delay in care was "one factor" in his permanent disability due to blindness in his right eye.

## IV.   Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278,

1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.  *Id.*

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross

negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff's allegations against Defendant Mendez are too vague and conclusory to state a claim.  Plaintiff alleges that Defendant Mendez had the ability to approve and arrange the follow-up procedure, but he alleges no facts to support that Defendant Mendez was in any way involved in or aware of Plaintiff's medical care or his requests for follow-up.  As presented, Plaintiff fails to state a claim against Defendant Mendez.  The Court will therefore dismiss Defendant Mendez and Count Two.

**V.  Claim for Which an Answer Will be Required**

Liberally construed, Plaintiff has stated an Eighth Amendment claim in Count One against Defendant Mardesich in her individual capacity based on the allegation that Mardesich instituted policies that contradicted ADC policies and amounted to deliberate indifference to his serious medical needs.  The Court will require Defendant Mardesich to answer the Complaint.

**VI.  Warnings**

**A.  Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis.  Failure to comply may

1    result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $168.60.

(3) Count Two is **dismissed** without prejudice.

(4) Defendant Mendez is **dismissed** without prejudice.

(5) If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil

Procedure.

(6) Defendant Mardesich must answer Counts One.

(7) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendant Mardesich.

(8) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(10) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(11) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order.

(12) If Defendant agrees to waive service of the Summons and Complaint, Defendant must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(13) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

TERMPSREF

- 9 -

by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(14)    Defendant Mardesich must answer Count One of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(15)    This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 28th day of February, 2024.

_____
James A. Teilborg
Senior United States District Judge

TERMPSREF