MGD

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald R. Huston,<br>             Plaintiff,<br>v.<br>A. Mardesich, et al.,<br>             Defendants. | No. CV-23-02203-PHX-JAT (DMF)<br><br>**ORDER** |

Plaintiff Donald R. Huston, who is currently confined in the Central Arizona Correctional and Rehabilitation Facility (CACRF), brought this pro se civil rights action pursuant to 42 U.S.C. § 1983 regarding the alleged lack of treatment for a detached retina. Defendant Mardesich moves for summary judgment. (Doc. 46.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 49), and he opposes the Motion. (Doc. 66.)

**I.    Background**

On screening the Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical care claim in Count One against Defendant Health Service Administrator (HSA) A. Mardesich in her individual capacity based on the allegation that Defendant instituted policies that delayed Plaintiff from receiving healthcare and led to blindness in one eye. (Doc. 5.) The Court directed Defendant to answer the claim and dismissed the remaining claim and defendant. (*Id*.)

## II. Legal Standards

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Eighth Amendment

To support a medical care claim under the Eighth Amendment, a prisoner must

demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Id.* (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059–60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

### III.    Facts[1]

CACRF is a private prison in Florence, Arizona, operated under contract with the Arizona Department of Corrections Rehabilitation and Reentry (ADCRR) by GEO Secure Services (GEO). (Doc. 47 (Def.'s Statement of Facts (DSOF)) ¶¶ 1, 3.) At the time relevant to the Complaint, Defendant was employed as a medical services provider and HSA for GEO. (*Id.* ¶ 3.)

On February 23, 2022, Plaintiff saw an outside provider, Dr. Derek Y. Kunimoto, MD, at Retinal Consultants of Arizona Ltd., and Dr. Kunimoto diagnosed Plaintiff with retinal detachment of the right eye. (Doc. 66-2 at 5.) Dr. Kunimoto recommended surgery, and Plaintiff consented to surgery. (*Id.*) On March 7, 2022, Plaintiff had surgery by Dr. Kunimoto for "SERIOUS RETINAL DETACHMENT RIGHT EYE; TRD OD." (Doc. 66-2 at 43 (emphasis in original).)

On March 8, 2022, Plaintiff had a one-day post-op follow up at Retinal Consultants and reported that his right eye felt sore, but he had no pain or complaints.[2] (Doc. 66-1 at 50, 53.) Dr. Jamal noted: "Doing well. Start Rx, alt precautions, and positioning. Return 1 week (DYK)," which apparently meant Plaintiff was to return in a week to see Dr. Kunimoto. (*Id.*)

---

[1] Defendant provides almost no evidence of Plaintiff's medical care in her summary judgment briefing, and her Statement of Facts (Doc. 47) merely makes the conclusory assertion that she provided "appropriate, reasonable medical services" to Plaintiff to address his medical needs and that nothing in her encounters with him revealed a serious medical need. Therefore, most of the relevant facts regarding Plaintiff's medical care are taken from the medical records Plaintiff submitted with his Response and from Plaintiff's Complaint. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

[2] Karim N. Jamal, MD, apparently did the follow-up exam because he signed this medical record. (*See* Doc. 66-1 at 53.)

On March 16, 2022, Plaintiff saw Dr. Kunimoto for follow up. (*Id*. at 46.) Dr. Kunimoto noted: "OD VA slowly clearing up. NO pain. Using drops as directed. OS no complaints." (*Id*.) Dr. Kunimoto further noted: "Retina is attached. There is mild traction inferiorly. No s/s of infection IOP is good at (16)." (*Id*. at 49.)

On April 27, 2022, Plaintiff saw Dr. Kunimoto for follow up, and Plaintiff reported no change in his vision since the last visit and no floaters, flashes or pain in either eye. (*Id*. at 43.) Dr. Kunimoto's Assessment was "Recurrent RD [retinal detachment] OD [right eye]" and "S/P 25 g PPV / SBP /MP / PRP /C3f8 gas OD – 03/07/2002." (*Id*. at 45.) Under Plan of Care, Dr. Kunimoto wrote:

> Unfortunately, there is inferior PVR[3] with a recurren[t] RD OD. Recommend surgery. RBA discussed. The patient elects surgery.
>
> Drops Vigamox QID until done
>
> Pred QID
>
> Plan: 25 g PPV / MP /PRP / retinectomy / SO exchange OD

(*Id*.) On April 27, 2022, Plaintiff signed a surgical consent form for a retinectomy of the right eye for "recurrent RD." (Doc. 66-2 at 44-45.)

On May 9, 2022, Plaintiff submitted an HNR to make sure the follow-up surgery was scheduled. (Doc. 66-1 at 7.) The nurse's response says, "Given to MRC." (*Id*.) On May 10, 2022, Nurse Courtney told Plaintiff to use Inmate Letters, not HNRs, "for these types of questions as they bog down her nursing line." (Doc. 1 at 5-6.)

Plaintiff explains that under ADCRR Department Order 1101, prisoners request healthcare through an HNR and are supposed to be seen by a nurse within 24 hours of receipt of an HNR for routine needs or immediately for emergent needs. (*Id*. at 4.) Plaintiff

---

[3] "Proliferative vitreoretinopathy (PVR) is the most common cause for failure of rhegmatogenous retinal detachment repair and is characterized by the growth and contraction of cellular membranes within the vitreous cavity and on both sides of the retinal surface as well as intraretinal fibrosis." National Institutes of Health, *Proliferative Vitreoretinopathy: A Review*, https://pmc.ncbi.nlm.nih.gov/articles/PMC6310037/ [permalink: https://perma.cc/3JFF-48RL ].

- 5 -

states that when a prisoner submits an Inmate Letter, it can take up to 20 workdays for a response. (*Id*.) The difference in response times between an HNR and Inmate Letters, according to Plaintiff, results in cost savings because it "reduces the number of nurses required to conduct nursing lines, which result in delays or denial in proper healthcare." (*Id*.)

On May 10, 2022, Plaintiff submitted an Inmate Letter to the HSA requesting the second surgery. (*Id*. at 6.)[4] On May 13, 2022, Defendant responded that "she personally called the 'surgery scheduler' and 'successfully confirmed' plaintiff was scheduled for the recommended eye surgery soon." (*Id*.) Plaintiff spent a night in a medical unit observation bed prior to surgery, but the following day he was released back to his unit and was told his surgery was canceled because GEO did not have the staff to transport him to surgery.[5] (*Id*.)

On May 16, 2022, Breanna Estrada from Retinal Consultants called the prison to reschedule surgery because Plaintiff was a no show for surgery that day. (*See* Doc. 66-1 at 42.)

On May 25, 2022, Plaintiff submitted an HNR stating that he was scheduled for surgery on his right eye for a detached retina and asking if the 3 different drops he was supposed to use for 3 days prior to the surgery had been ordered. (*Id*. at 8.) A nurse responded that "we will let you know prior x 3 days before. Appointment was 5-16-2022. Has to be rescheduled." (*Id*.)

On June 1, 2022, Breanna Estrada from Retinal Consultants called the prison to see if Plaintiff's surgery could be moved up to June 2 but the prison informed Estrada that a driver was not available to transport Plaintiff and so the surgery would remain scheduled for June 27. (*Id*. at 41.)

---

[4] The Inmate Letters and Responses that Plaintiff writes about in his Complaint are not in the record.

[5] Plaintiff does not say when this occurred but, given the context, it appears this happened around May 16, 2022.

1 On June 7, 2022, Plaintiff sent an Inmate Letter to Medical concerning the surgery and eyedrops he needed to use prior to surgery. (Doc. 1 at 6.) The HSA responded on June 13, 2022, that the surgery had been rescheduled and the eye drops had been reordered. (*Id*.)[6] Plaintiff did not receive the eyedrops he was supposed to use prior to the surgery. (*Id*.)

On June 27, 2022, Dr. Kunimoto performed another surgery for Plaintiff's "TOTAL RETINAL DETACHMENT RIGHT EYE." (Doc. 66-2 at 36-37 (emphasis in original).) The procedure was a "Right Vitrectomy, Laser, Membrane Strip, Retinectomy, Silicone Oil Injection." (*Id*. at 37.) Plaintiff explains that an "NOS bubble" was placed in his right eye "to hold parts of the eye together" and that the surgeon said the NOS bubble must be released in 6 weeks, i.e., around August 8, 2022. (Doc. 1 at 6, 9.)

On June 28, 2022, Plaintiff saw Dr. Sachin Mehta at Retinal Consultants for follow-up. (Doc. 66-1 at 36, 40.) Plaintiff complained of blurry vision in his right eye. (*Id*.) Following examination, Dr. Mehta noted:

—retina attached under oil

—no s/s infection

—eye is soft by AC formed, no wound leak

—Start PF/Oflox QID

—RD/endoph WS discussed

—positioning discussed

—f/u 1 week PO OD w/ DYK

(*Id*. at 39.)

Upon Plaintiff's return to prison that day, a nurse noted that Plaintiff had an eye patch and was to use eye drops for 3 months. (Doc. 66-2 at 22.) The nurse also wrote "F/u 1 wk PO OD c DYK," which presumably meant Plaintiff was to follow up in one week with Dr. Kunimoto.

---

[6] "HSA" apparently refers to Defendant.

- 7 -

On August 9, 2022, Plaintiff submitted an HNR asking if the post-op appointment that was to take place 6 weeks after the surgery had been scheduled. (Doc. 66-1 at 9.) LPN T. Shaffer responded that same day to "submit inmate letter." (*Id*.)

On August 16, 2022, Plaintiff submitted Inmate Letters to Medical and the HSA "requesting care."[7] (Doc. 1 at 7.)

On August 17, 2022, Plaintiff felt that the NOS bubble had ruptured. (*Id*.)

On August 18, 2022, RN Blanco noted in Plaintiff's prison medical record that Plaintiff was complaining of right eye pulsating and shaking for the past 3 days and that "the bubble that was put on my last [right] eye Sx [surgery] has popped." (Doc. 66-4 at 4-5.) RN Blanco wrote that Plaintiff had surgery on June 27, 2022, "schedule [patient with] ophthalmology surgeons," and referred Plaintiff to a healthcare provider. (*Id*. at 4-5.)

On August 23, 2022, Deputy Warden Dennis looked at Plaintiff's eye and instructed Plaintiff to submit an HNR. (Doc. 1 at 7.) Plaintiff considered this a direct order from the Deputy Warden and so submitted the following HNR on August 24, 2022: "Attn: HSA A. Mardesich. I had surgery on my right eye for a detached retina. I was supposed to go back to the surgeon on 8/8/2022 for a 6 week post-op check up and to pop the N.O.S. bubble in my eye. I have not gone and it's almost 2 week[s] past due. I need to know when I will go." (*Id*.; Doc. 66-1 at 10.) On August 25, 2022, Defendant responded: "You are scheduled. Please use an inmate letter for this type of request in the future." (Doc. 66-1 at 10.)

On August 25, 2022, Plaintiff saw Dr. Mehta at Retinal Consultants, and Plaintiff reported his "vision has barely been LP since surgery. He can see a small silver [sic] of light in the upper lefthand quadrant of the right eye. He does not feel this has changed since surgery. Patient denies pain or headaches OD." (*Id*. at 34.) The Assessment by Dr. Mehta was "S/P 25 g PPV / MP / PRP / retinectomy / SO exchange OD – 59 Days. Total retinal detachment, right eye." (*Id*. at 37.) Under Plan, Dr. Mehta wrote:

---

[7] Plaintiff does not say what care he requested or if he received responses to his Inmate Letters.

- 8 -

      —pt lost [sic] to follow-up for 2 months

      —exam confirms macular PVR

      —no s/s infection

      —lOP low but acceptable

      —RD/endoph WS discussed

      RTC 1 month PO w/ DYK

(*Id*.)

Dr. Mehta told Plaintiff that he "needed to see the doctor who did the surgery." (Doc. 1 at 7.)

On August 27, 2022, Plaintiff sent an Inmate Letter to Defendant, and on September 9, 2022, Defendant sent a response stating Plaintiff "would be seen soon."[8] (*Id*.)  On September 26, 2022, Plaintiff submitted an Inmate Letter to Defendant "requesting an appointment."[9] (*Id*.)

On October 5, 2022, Plaintiff saw Dr. Kunimoto at Retinal Consultants.  (Doc. 66-1 at 29.)  Plaintiff reported that his vision had not returned since his last visit, he did not have pain in either eye, and he denied seeing any new flashes, floaters or distortion.  (*Id*.)  Under Assessment, Dr. Kunimoto noted "[t]otal retinal detachment, right eye."  (*Id*. at 33.)  In the plan of care, Dr. Kunimoto wrote: "[t]here is a closed funnel RD OD, under silicon oil. Dismal visual prognosis. Comfort measures. Follow."  (*Id*.)  Dr. Kunimoto said Plaintiff was to return in 1 year for follow up.  (*Id*.)  The doctor informed Plaintiff that "nothing else could be done."  (Doc. 1 at 7.)

On December 12, 2022, Plaintiff asked to receive a second opinion and was informed that GEO only contracts with one retinal specialist and Plaintiff has no right to dictate his healthcare.  (Doc. 1 at 7-8.)

---

[8] Plaintiff does not say what he wrote in this Inmate Letter.

[9] Plaintiff does not provide any details about this Inmate Letter or say if he received a response.

- 9 -

On April 23, 2023, Plaintiff saw Dr. Kunimoto who assessed Plaintiff, in part, with total retinal detachment, right eye. (Doc. 66-1 at 24.) Plaintiff reported that his vision had been getting worse since his last visit, he has constant pain and little to no vision in his right eye, and he denied any new flashes, floaters, or distortion since his last visit. (*Id*. at 24-25.) In the plan of care, Dr. Kunimoto noted "[t]here is a closed funnel RD OD, under silicon oil. Dismal visual prognosis. Comfort measures. Follow." (*Id*. at 24.)

On May 28, 2024, Plaintiff submitted an HNR requesting a health aide because he is blind in his right eye. (*Id*. at 11.) The response from RN Oszust states that Plaintiff had a pending appointment for a chart review to look into his request. (*Id*.) A note in Plaintiff's prison medical record dated September 26, 2024, states "Health Aid SNO [special needs order], issued." (Doc. 66-4 at 26.)

**IV.     Discussion**

    **A.     Serious Medical Need**

Although Defendant asserts in her Declaration that "[a]t no time in any encounters with Plaintiff did he present with a serious medical need," there can be no real dispute that Plaintiff's detached retina condition constituted a serious medical need. Plaintiff's detached retina was "worthy of comment or treatment" as revealed by his medical records showing that Plaintiff had two surgeries in 2022 for his detached retina, multiple follow-up visits with the specialist(s), and has now been assigned an aide for his right eye blindness. The record therefore supports that Plaintiff's retinal detachment and accompanying blindness constitute serious medical needs. *See McGuckin*, 974 F.2d at 1059–60. *See also Browning v. Snead*, 886 F. Supp. 547 (S.D. W.Va. 1995) (a detached retina is a serious medical condition); *Hanson v. Blaine County*, No. 1:16-cv-00421-BLW, 2018 WL 3370526, at * 5 (D. Id. Jul 9, 2018) ("[a] detached retina may constitute a serious medical need."); *Herrera-Cubias v. Fox*, No. 08-CV-0517-TUC-AWT, 2012 WL 12539503, at *4 (D. Ariz. Sept. 10, 2012) ("courts have held that a detached retina is a serious medical need because it causes discomfort, necessitates surgery, and can lead to blindness") (citations omitted).

### B. Deliberate Indifference

The second prong in the analysis examines whether Defendant was deliberately indifferent to Plaintiff's serious medical need. The inquiry into an individual defendant's liability for deliberate indifference "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see Rizzo v. Goode*, 423 U.S. 362, 370–71, 375–77 (1976).

The initial inquiry in the deliberate indifference analysis is whether Defendant knew of Plaintiff's serious medical need. Evidence in the record supports that Defendant was aware Plaintiff suffered from a detached retina because she avers that she was aware of Plaintiff's history and the referrals for him to see an offsite specialist. (Doc. 47-2 at 3, Def. Decl. ¶ 5.)

Next, the Court considers Defendant's response to Plaintiff's serious medical need. The evidence reflects that on April 27, 2022, after Plaintiff's first surgery, Dr. Kunimoto recommended a second surgery for recurrent retinal detachment in the right eye, and Plaintiff agreed to the second surgery. Plaintiff began asking on May 9, 2022, for the second surgery to be scheduled. He was told to use Inmate Letters for these types of requests, not HNRs. On May 10, Plaintiff sent an Inmate Letter to the HSA, and Defendant responded on May 13, 2022, that Plaintiff was scheduled for the recommended eye surgery soon. The record indicates that the second surgery was originally scheduled to take place around May 16, but did not happen then because of prison transport issues. Plaintiff inquired via HNRs and Inmate Letters about the second surgery and getting the eye drops he needed to use before the surgery. On June 13, Defendant responded to Plaintiff's June 7 Inmate Letter that the surgery was rescheduled.

The second surgery took place June 27, 2022, and Dr. Kunimoto told Plaintiff to return in 6 weeks to release the NOS bubble, but Plaintiff did not return to Retinal Consultants by August 8. On August 16, 2022, Plaintiff submitted Inmate Letters to Medical and the HSA requesting unspecified "care," and on August 17, Plaintiff felt the

NOS bubble rupture. Plaintiff saw a nurse on August 18 about the burst bubble, and the record says he was referred to a provider. On August 24, Plaintiff submitted an HNR to Defendant about not having the six-week follow up for his surgery, and Defendant responded on August 25 that Plaintiff was scheduled. That same day, August 25, Plaintiff saw Dr. Mehta at Retinal Consultants, and Dr. Mehta diagnosed Plaintiff with "[t]otal retinal detachment, right eye." (Doc. 66-1 at 37.) When Plaintiff saw Dr. Kunimoto on October 5, 2022, Dr. Kunimoto told Plaintiff "nothing else could be done," and his plan of care was "comfort measures" with "dismal visual prognosis." (Doc. 1 at 7, Doc. 66-1 at 33.)

As stated, in addressing an individual's liability, the Court must consider the duties and responsibilities of the defendant. In her declaration, Defendant fails to describe her duties and responsibilities. (*See* Doc. 47-2 at 2-4.) Defendant avers that she did not take "any affirmative action to deprive Plaintiff of any of his rights"; however, under Ninth Circuit law, a failure to act is sufficient to support § 1983 liability. (*Id.* ¶ 7.) *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Shaka v. Ryan*, CV 10-02253-PHX-SMM (BSB), 2015 WL 926192, at *8 (D. Ariz. March 4, 2015) (explaining why, under Ninth Circuit law, FHA defendant who responded to the plaintiff's grievance could be liable). Thus, there is a question of fact whether Defendant was aware of Plaintiff's need for surgery and surgery follow up and whether she was responsible for medical transport and/or scheduling such that she could have, but failed to act, to ensure Plaintiff timely received specialist-recommended care. However, there is no dispute that Defendant was not Plaintiff's treating provider, and Plaintiff's vague Inmate Letters requesting "care" after his second surgery and even his August 24, 2022, HNR about not receiving a six-week follow-up failed to convey urgency such that Defendant could be found to be deliberately indifferent. Moreover, Plaintiff saw Dr. Mehta at Retinal Consultants on August 25, 2022, for his surgery follow-up. Thus, on this record, Defendant's involvement, which consisted of responses to Inmate Letters in May and June 2022 and an HNR on August 25, 2022, about scheduling appointments with the specialist were not egregious enough to rise to deliberate

indifference. *See McGuckin*, 974 F.2d at 1060–61 (repeated failure to properly treat a prisoner or a single failure that is egregious strongly suggests deliberate indifference); *Wood*, 900 F.2d at 1334 ("[i]n determining deliberate indifference, we . . . look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect").

The last element is whether Plaintiff was harmed by the delays in treatment. The first delay was the delay in surgery from May 16 to June 27, and the second delay was the delay in follow up from August 8 to August 25. The above facts do not include claims that Plaintiff complained of pain or symptoms between May 16 and June 27, and during the second delay, Plaintiff only inquired about the date of the follow up and he then reported on August 17 that the "bubble" had ruptured, but he was seen by the specialist on August 25—the day after he sent an HNR to Defendant asking for the follow up. Without more, there is insufficient evidence that Plaintiff's current blindness in his right eye was due to any delay in receiving care and that any delay was attributable to Defendant.

Accordingly, the Court will grant summary judgment to Defendant.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 46), and the Motion is **granted**.

(2) This action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 21st day of November, 2025.

James A. Teilborg
Senior United States District Judge

- 13 -